# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| MICHAEL CUEVAS, § | | |
| TDCJ No. 579522, § | | |
|     Petitioner, § | | |
| § | | |
| v. § | EP-11-CV-180-KC | |
| § | | |
| RICK THALER,[1] Director, Texas § | | |
| Department of Criminal Justice, § | | |
| Correctional Institutions Division, § | | |
|     Respondent. § | | |

## MEMORANDUM OPINION AND ORDER

Petitioner Michael Cuevas ("Cuevas"), a state prisoner proceeding *pro se,* seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254 [ECF No. 1]. In his petition, Cuevas claims the Texas Board of Pardons and Paroles ("the Board") violated his rights when it denied him release from prison to mandatory supervision.[2] In his answer [ECF No. 13], Respondent Rick Thaler ("Thaler") asserts the Court should defer to prior decisions of the Texas Court of Criminal Appeals ("CCA") denying identical claims made by Cuevas in his state writ applications and deny him relief. In the alternative, Thaler maintains Cuevas's claims lack merit. For the reasons discussed below, the Court concludes that Cuevas is not entitled to § 2254 relief. The Court will accordingly dismiss his petition. The Court will additionally deny Cuevas a certificate of appealability.

---

[1] Although Cuevas named the Texas Board of Pardons and Paroles as Respondent in this matter, the rules governing § 2254 cases provide that "[i]f the petitioner is currently in custody under a state-court judgment, the petitioner must name as respondent the state officer who has custody." 28 U.S.C.A. § 2254 PROC. R. 2(a) (West 2011). Rick Thaler, as the Director of the Correctional Institutions Division for the Texas Department of Criminal Justice, currently exercises custody over Cuevas.

[2] *See* TEX. GOV'T CODE § 508.001 (5) ("'Mandatory supervision' means the release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division.").

## BACKGROUND AND PROCEDURAL HISTORY

Between 1991 and 2001, state courts in El Paso County, Texas, found Cuevas guilty of multiple burglary offenses.[3] After serving time for each conviction, the Board would release Cuevas to parole or mandatory supervision only to later revoke his supervised release and order his return to prison.[4]

Thaler currently holds Cuevas at the Wheeler Unit in Tennessee Colony, Texas, pursuant to three judgments and sentences.[5] In the first two cases, Cuevas pleaded guilty to burglary of a habitation offenses in cause numbers 59984 and 59985 in 120th District Court of El Paso County. On March 4, 1991, the trial judge accepted his pleas and sentenced him to twenty-one years' imprisonment in each case, to run concurrently. In the third case, Cuevas pleaded guilty to burglary of a habitation in cause number 20010D02925 in the 346th District Court of El Paso County. On July 24, 2001, the trial court accepted his plea and assessed a punishment of nine years' imprisonment, to run concurrently with his other judgments and sentences. The Board released Cuevas to mandatory supervision for the last time on March 8, 2007. Over two years later, on May 7, 2009, Cuevas admitted to a parole officer that he had violated the terms of his release by failing to wear a required electronic monitoring ankle transmitter. Cuevas also waived his right to a revocation hearing. Then, on May 21, 2009, the Board voted to revoke his mandatory supervision for failing to participate in an electronic monitoring program and failing to wear the required ankle transmitter.

---

[3] *See State v. Cuevas*, Cause Nos. 59984 and 59985 (120th Dist. Ct., El Paso County, Tex. Mar. 4, 1991); *State v. Cuevas*, Cause No. 68092 (243rd Dist. Ct., El Paso County, Tex. Dec. 12, 1992); *State v. Cuevas*, Cause No. 20010D02925 (346th Dist. Ct., El Paso County, Tex. July 24, 2001).

[4] Resp't's Answer Ex. B (Aff. of Charles Valdez).

[5] Resp't's Answer 2–3.

Relevant to this petition, the Board advised Cuevas on December 9, 2010, of a review for his possible release to mandatory supervision.[6] The notice informed Cuevas that he could submit additional information for the Board's consideration before January 21, 2011.[7] On January 27, 2011, the Board voted to deny Cuevas's release for multiple reasons.

> 9D1. The record indicates that the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation.
> 9D2. The record indicates that the inmate's release would endanger the public.
> 1D. The record indicates that the inmate has repeatedly committed criminal episodes or has a pattern of similar offenses that indicates a predisposition to commit criminal acts when released; or the record indicates that the inmate is a leader or active participant in gang or organized criminal activity; or the record indicates a juvenile or an adult arrest or investigation for felony and misdemeanor offenses.
> 2D. The record indicates that the inmate committed one or more violent criminal acts indicating a conscious disregard for the lives, safety, or property of others; or the instant offense or pattern of criminal activity has elements of brutality, violence, or conscious selection of victim's vulnerability such that the inmate poses an undue threat to the public; or the record indicates use of a weapon.
> 5D. The record indicates unsuccessful period of supervision on previous probation, parole, or mandatory supervision that resulted in incarceration, including parole-in absentia revocations.[8]

Cuevas filed four state applications for writs of habeas corpus challenging the Board's action. The CCA denied these applications without written orders on April 13, 2011.[9] This proceeding followed on May 3, 2011.

---

[6] Resp't's Answer Ex. C (Notice of Initial Discretionary Mandatory Review).

[7] *Id.*

[8] *Id.* (Notice of Parole Panel Decision, Feb. 3, 2011).

[9] *Ex parte Cuevas*, WR-65,264-06, WR-65,264-07, WR-65,264-08, WR-65,264-09 (Tex. Crim. App. Apr. 13, 2011).

Mindful of Cuevas's *pro se* status, the Court construes his instant petition liberally.[10] The Court understands him to make four interrelated arguments to show the Board violated his rights when it denied him a release from prison on mandatory supervision. First, he maintains he has a "constitutional expectation" in an early release from prison on mandatory supervision.[11] Second, he asserts the Board wrongfully relied on "unchanging factors" such as the nature of his crimes and his criminal history—not his behavior or accomplishments in prison—to justify denying him release on mandatory supervision.[12] Third, he insists the Board should have released him on mandatory supervision as soon as his flat time and good time equaled the length of his sentence.[13] Finally, he contends the Board has ignored his good conduct time and "trivialized or manipulated" the system in such a way that it has imposed an "illegal sentence" on him.[14]

## APPLICABLE LAW

"[C]ollateral review is different from direct review,"[15] and the writ of habeas corpus is "an extraordinary remedy"[16] reserved for those petitioners whom "society has grievously wronged."[17] It "is designed to guard against extreme malfunctions in the state criminal justice

---

[10] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* pleadings to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (explaining liberal construction allows active interpretation of a *pro se* pleading to encompass any allegation which may raise a claim for federal relief).

[11] Pet'r's Pet. 7.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 8.

[15] *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

[16] *Id.*

[17] *Id.* at 634.

system."[18]  Accordingly, a federal habeas court's role in reviewing state prisoner petitions is exceedingly narrow.  Section 2254 allows a court to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[19]  Accordingly, a court may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.[20]

As a prerequisite to obtaining § 2254 relief, a prisoner must exhaust all remedies available in the state system.[21]  This exhaustion requirement reflects a policy of federal-state comity "designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'"[22]  It also prevents "unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution."[23]  A petitioner satisfies the exhaustion requirement when he presents the substance of his habeas claims to the state's highest court in a procedurally proper manner before filing a petition in federal court.[24]

In Texas, the CCA is the highest court for criminal matters.[25]  Thus, Texas prisoners may

---

[18] *Id.* (citing Justice Stevens's concurrence in *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

[19] 28 U.S.C.A. § 2254(a) (West 2011).

[20] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

[21] 28 U.S.C. § 2254(b)(1), (c); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999).

[22] *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).

[23] *Ex Parte Royall,* 117 U.S. 241, 251 (1886).

[24] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004).

[25] *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985).

satisfy the exhaustion requirement only by presenting both the factual and legal substance of their claims to the CCA in either a petition for discretionary review or a state habeas corpus proceeding pursuant to Texas Code of Criminal Procedure article 11.07.[26]

Moreover, federal habeas courts must generally defer to state court decisions on the merits[27] and on procedural grounds.[28] "Indeed, federal courts do not sit as courts of appeal and error for state court convictions."[29] Thus, federal habeas courts should deny claims decided by state courts on the merits unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[30]

A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.[31] An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle

---

[26] TEX. CRIM. PROC. CODE art. 11.07; *Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001); *Alexander v. Johnson*, 163 F.3d 906, 908-09 (5th Cir. 1998).

[27] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[28] *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

[29] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

[30] 28 U.S.C.A. § 2254(d).

[31] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

to the facts.[32]

A federal court should focus "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence."[33] Indeed, a state court is presumed to "know and follow the law."[34] Even where the state court fails to cite applicable Supreme Court precedent or is unaware of such precedent, the deferential standard of review nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]."[35]

Furthermore, a federal court's review of a state court's decision is "limited to the record that was before the state court that adjudicated the claim on the merits."[36] The state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence."[37] "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."[38]

Thus, federal habeas relief is only merited where the state-court decision is incorrect or

---

[32] *Id.*

[33] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("[W]e review only the state court's decision, not its reasoning or written opinion[.]").

[34] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[35] *Early v. Packer*, 537 U.S. 3, 8 (2002).

[36] *Cullen v. Pinholster*, -- U.S. --, --, 131 S. Ct. 1388, 1398–99 (2011).

[37] 28 U.S.C.A. § 2254(e)(1).

[38] *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001).

objectively unreasonable.[39] Accordingly, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision.[40]

With these principles in mind, the Court turns to the merits of Cuevas's claims.

## ANALYSIS

Thaler concedes that "Cuevas . . . exhausted his state court remedies."[41] Thus, Cuevas presented the substance of his habeas claims to the CCA in a procedurally proper manner before he filed the instant petition. The CCA, however, denied Cuevas relief without written orders.[42] "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."[43] In this case, the CCA's denials of Cuevas's state writ applications constituted substantive adjudications.[44] Cuevas has not attempted to show that the CCA's determinations were "contrary to, or involved an unreasonable application of, clearly established Federal law . . . or . . . an unreasonable determination of the facts."[45] Cuevas must satisfy this mandatory

---

[39] *Woodford*, 537 U.S. at 27.

[40] *Harrington v. Richter*, -- U.S. --, --, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[41] Resp't's Answer 4.

[42] *Ex parte Cuevas*, WR-65,264-06, WR-65,264-07, WR-65,264-08, WR-65,264-09 (Tex. Crim. App. Apr. 13, 2011).

[43] *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

[44] *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003) (citing *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999)); *see also Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than its merits).

[45] 28 U.S.C.A. § 2254(d).

predicate in order to receive relief.[46] Because Cuevas has failed to meet his burden, the Court must defer to the CCA's denial of relief and dismiss his petition. Moreover, the Court finds that Cuevas's claims lack merit.

In his first ground for relief, Cuevas asserts that the Board held him past his mandatory supervision eligibility date in violation of his "constitutional expectancy of early release."[47] He explains that "[b]y operation of law, every prison sentence has an eligibility date for regular parole and if the crime[ ] qualifies, a date for release under mandatory supervision."[48] In his third ground for relief, Cuevas insists that the Board should have released him on mandatory supervision as soon as his flat time and good time equaled the length of his sentence because "inmates who conform[ ] to rules, take advantage of programs, and served time in an exemplary manner, should be reward[ed] with the minimum sentence."[49]

In the Texas penal system, the mandatory supervision program permits "the release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division."[50] Texas calls this early-release program "mandatory supervision" because, under the original law, an eligible inmate received a nondiscretionary right to release once his actual time served plus his accrued good-time credit equaled his prison sentence.[51] "[B]ased solely on

---

[46] 28 U.S.C.A. § 2254(d); *Harrington*, -- U.S. at -- , 131 S. Ct. at 785.

[47] Pet'r's Pet. 7.

[48] *Id.*

[49] *Id.*

[50] TEX. GOV'T CODE § 508.001(5).

[51] *Boss v. Quarterman*, 552 F.3d 425, 427 (5th Cir. 2008).

-9-

simple arithmetic,"[52] the original program permitted officials no discretion to deny an eligible inmate release from prison.[53] After Texas amended its mandatory supervision program in 1996, the early-release program's title became something of a misnomer. No longer was release strictly mandatory upon a prisoner's mathematical eligibility.[54] Instead, under the post-September 1, 1996 scheme, although the statute still provided that a parole panel "shall issue the release" of an eligible inmate,[55] the addition of a new section allowed the parole panel a "modicum of discretion"[56] to deny release if it determined that "(1) the inmate's accrued good conduct time [was] not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public."[57] This new scheme was "mandatory in large part, but also discretionary in small part."[58]

The law in effect at the time an eligible offender committed his holding offense determines the criteria for his early-release program.[59] If he committed his holding offense before September 1, 1996, the State must automatically released him from prison when his time served plus his good conduct time credits equal the length of his sentence.[60] If he committed his

---

[52] *Teague v. Quarterman*, 482 F.3d 769, 775 (5th Cir. 2007).

[53] *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

[54] *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir.2000).

[55] TEX. GOV'T CODE § 508.147(a).

[56] *Teague*, 482 F.3d at 774.

[57] TEX. GOV'T CODE § 508.149(b).

[58] *Teague*, 482 F.3d at 775.

[59] *Ex parte Thompson*, 173 S.W.3d 458, 458 (Tex. Crim. App. 2005).

[60] *Boss*, 552 F.3d at 427.

holding offense after September 1, 1996, however, his release is subject to a parole panel review and may be denied if the panel determines that his accrued good time does not accurately reflect his potential for rehabilitation and that his release would endanger the public.[61]

Although Cuevas committed two holding offenses prior to September 1, 1996, he committed his third holding offense in 2001.[62] Thus, Cuevas's most recent conviction places him under the amended mandatory supervision law and makes him ineligible for automatic release.[63]

The Fifth Circuit Court of Appeals has found that "Texas's [amended] mandatory supervision scheme is virtually identical to [the parole scheme] at issue in *Greenholtz*,"[64] and thus also "creates a constitutional expectancy of early release."[65] A Texas inmate is therefore entitled to the same procedural protections set forth in *Greenholtz* before the Board may deny his release on mandatory supervision.[66] That is, he must be afforded notice and a meaningful opportunity to be heard, and if mandatory supervision is denied, he must receive a statement of the reasons.[67]

In this case, the Board advised Cuevas on December 9, 2011, of a review for his possible

---

[61] TEX. GOV'T. CODE § 508.149(b).

[62] *State v. Cuevas*, Cause No. 20010D02925 (346th Dist. Ct., El Paso County, Tex. July 24, 2001).

[63] *Ex parte Thompson*, 173 S.W.3d at 459.

[64] *Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1 (1979).

[65] *Teague*, 482 F.3d at 777.

[66] *Boss*, 552 F.3d at 427.

[67] *Greenholtz*, 442 U.S. at 15-16.

release to discretionary mandatory supervision.[68] This notice informed Cuevas that the Board would not release him if it determined that his accrued good time was not an accurate reflection of his potential for rehabilitation and that his release would endanger the public.[69] This notice also informed Cuevas that he could submit additional information for the Board's consideration before January 21, 2011.[70] On January 27, 2011, the Board voted to deny Cuevas release on mandatory supervision. The Board determined, among other things, that Cuevas's accrued good-time credits did not accurately reflect his potential for rehabilitation, and that his release would endanger the public. After the Board denied Cuevas release, it provided him with a statement of its reasons.[71] Thus, Cuevas received the procedural protections guaranteed by *Greenholtz*. As a result, Cuevas is not entitled to relief based on grounds one and three of his petition.

In his second ground for relief, Cuevas asserts the Board wrongfully relied on "unchanging factors" such as the nature of his crimes and his criminal history—not his behavior or accomplishments in prison—as the justification for denying him release on mandatory supervision.[72] In his final ground for relief, Cuevas contends the Board has ignored his good conduct time and "trivialized or manipulated" the system in such a way that it has imposed an "illegal sentence" on him.[73]

The Supreme Court has purposefully afforded disparate due process protections in

---

[68] Resp't's Answer Ex. C (Notice of Initial Discretionary Mandatory Review).

[69] *Id.*

[70] *Id*.

[71] Pet'r's Pet. Ex. C (Notice of Parole Panel Decision, Feb. 3, 2011).

[72] Pet'r's Pet. 7.

[73] *Id*. at 8.

different situations. In *Greenholtz*, for example, the Supreme Court found "nothing in the due process concepts . . . that requires the Parole Board to specify the particular 'evidence' in the inmate's file . . . on which it rests the discretionary determination that an inmate is not ready for conditional release."[74] The Supreme Court "reasoned that to require a parole board to provide a summary of the evidence would 'convert the process into an adversary proceeding,' which is . . . unhelpful in making the predictive and discretionary determination involved in conditional release."[75] In other words, the conditional release decision is "necessarily subjective in part and predictive in part,"[76] an "experienced prediction based on a host of variables."[77] Moreover, "the [Board] has the right to consider any evidence."[78] Thus, the Board has not denied an inmate's constitutional rights by reason of its consideration of the nature and circumstances of his prior offenses.[79] Accordingly, in this case the Board permissibly considered Cuevas's repeated burglary convictions and his prior unsuccessful periods of supervised release. As discussed above, the record shows the Board complied with all required due process in denying Cuevas a release on mandatory supervision. Therefore, the fact that the Board may have relied on "unchanging factors" or ignored Cuevas good conduct while in prison does not establish that he "is in custody in violation of the Constitution or laws or treaties of the United States."[80] As a

---

[74] *Greenholtz*, 442 U.S. at 15.

[75] *Boss*, 552 F.3d at 229 (quoting *Greenholtz*, 442 U.S. at 15).

[76] *Greenholtz*, 442 U.S. at 13.

[77] *Id.* at 16.

[78] *Page v. U.S. Parole Comm'n*, 651 F.2d 1083, 1086 (5th Cir. 1981); *Jackson v. Reese*, 608 F.2d 159, 160 (5th Cir. 1979).

[79] *Page*, 651 F.2d at 1085-1086 (holding parole commission's consideration of an underlying charge that had been dismissed when the defendant pled guilty to a lesser offense did not violate due process protections); *Jackson*, 608 F.2d at 160 (holding state prisoner's constitutional rights were not violated by reason of the parole board's consideration of the nature and circumstances of his offense).

[80] 28 U.S.C.A. § 2254(a).

result, Cuevas is not entitled to relief based on grounds two and four of his petition.

**CERTIFICATE OF APPEALABILITY**

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[81] Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted.[82] In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted.[83] Although Cuevas has not yet filed a notice of appeal, this Court must nonetheless address whether he is entitled to a certificate of appealability.[84]

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[85] In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[86] To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it

---

[81] 28 U.S.C.A. § 2253(c)(1) (West 2011).

[82] *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted).

[83] *See* 28 U.S.C.A. §2253(c)(3) ("The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required[.]"); *see also United States v. Kimler*, 150 F.3d 429, 431, and n.1 (5th Cir. 1998) (explaining it is well established that a circuit judge may address an issue not certified by a district court if the petitioner makes (1) an explicit request, and (2) a substantial showing of the denial of a constitutional right).

[84] *See* 28 U.S.C.A. 2254 Proc. R. 11(a) (West 2011) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

[85] 28 U.S.C.A. § 2253(c)(2).

[86] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[87] Here, Cuevas is not entitled to a certificate of appealability because reasonable jurists would not find the Court's procedural or substantive rulings debatable.

## CONCLUSION AND ORDERS

After carefully reviewing the record, and for the reasons stated above, the Court concludes that Cuevas is not entitled relief under 28 U.S.C. § 2254. Accordingly, the Court will enter the following orders:

1. The Court **DISMISSES WITH PREJUDICE** Petitioner Michael Cuevas's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [ECF No. 1].

2. Further, the Court **DENIES** Petitioner Michael Cuevas a **CERTIFICATE OF APPEALABILITY**.

3. Finally, the Court **DISMISSES AS MOOT** all pending motions in this cause, if any**.**

**SO ORDERED.**

**SIGNED** this 12th **day of October 2011.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

---

[87] *Id*.